(37 Misc. Rep. 47.)

## HAPPEL et al. v. BLESSING, Mayor, et al.

(Supreme Court, Special Term, Ulster County. January, 1902.)

INJUNCTION—CONTRACT BY MUNICIPALITY.

　　The officials of a city of the second class let a contract for paving in disregard of certain specifications requiring a bidder to prove that he has, in a city with a similar climate, laid a pavement with a similar material, which had worn well for five years. After requiring the asphalt used to be equal in quality to certain well-known grades of it, they accepted from the contractor asphalt of a cheaper grade; and, after excluding the use of "land" and "rock" asphalt, thereby excluding competition on the part of a person who dealt in asphalt of that character, they agreed to the use of such asphalt by the contractor. *Held* to entitle certain taxpayers of the city suing under Laws 1892, c. 301,

74 N.Y.S.—51

and Code Civ. Proc. § 1695, to restrain waste, and for fraud and illegality, to an injunction restraining the city officials from carrying out a contract as a waste of public funds, as fraudulent and illegal under a provision of the charter requiring the work to be let to the lowest bidder.

Action by William H. Happel and others against James H. Blessing, mayor of the city of Albany, and others, to restrain defendant from carrying out a certain contract. Injunction granted.

Countryman & Du Bois (Nicoll, Anable & Lindsay, of counsel), for plaintiffs.

Arthur L. Andrews, Corp. Counsel, for certain defendants.

Hiscock, Doheny, Williams & Cowie, for defendants Warner & Quinlan.

BETTS, J. This is a taxpayers' action, brought under the provisions of chapter 301 of the Laws of 1892 and section 1695 of the Code of Civil Procedure. By it the plaintiffs seek to restrain the defendants from carrying out the provisions of a certain contract or agreement made by the defendant the city of Albany with the defendants the firm of Warner & Quinlan for the pavement of a portion of Madison avenue, in said city, with asphalt. Such proceedings have been had in this case that in October, 1900, a temporary injunction restraining the defendants from proceeding any further under said contract or agreement was granted by Mr. Justice Chase. By an order granted by him he continued that temporary injunction until the case could be heard at a special term to be held in the said month of October. By agreement of all the parties, the argument has been delayed and adjourned from time to time until it came before me in April on the application of the plaintiffs to continue the injunction so granted pending the trial of the action. It is a matter of some importance to the citizens of Albany, and to the residents upon Madison avenue, and upon the hearing in April it was suggested by the court that a determination of the issues involved herein upon written ex parte affidavits must necessarily be unsatisfactory, and was only a partial determination; that a prompt trial was a better and a complete determination; and that a referee would be appointed to at once begin hearings, and promptly decide the matters in issue. This proposition was accepted by the plaintiffs, declined by the contractors, and not agreed to by the city authorities. The papers submitted are very voluminous, and deal with great detail with the matters in controversy.

It is claimed on behalf of the plaintiffs, among other things, in their complaint, that they are residents of and taxpayers in the city of Albany, and as such interested in the matters in controversy; that said Madison avenue, about 10 years ago, was paved with land or rock asphalt, and that the same is now unfit for use; that the common council of the city of Albany, acting under the provisions of the charter of cities of the second class, passed an ordinance providing for the resurfacing of Madison avenue, between certain streets named, "with sheet asphalt, according to plans and specifica-

tions prepared by the city engineer"; that said plans and specifications were prepared, and the board of contract and supply, or the proper city authorities, advertised for bids excluding from the materials with which said street should be paved "land" or "rock" asphalt; that a contract has been entered into with the defendants Warner & Quinlan, by which the said defendants intend to pave said Madison avenue with said land or rock asphalt, which plaintiffs claim is totally unfit for the purpose, as shown by the speedy wearing out of the former pavement on said Madison avenue and other streets of Albany, and was formally excluded by the specifications under which bids were invited; that this was an illegal official act; that the carrying out of this contract would be a great waste of the public funds, and a fraud upon the plaintiffs and all the other taxpayers of Albany; and the plaintiffs therefore demand judgment that the said contract or agreement be adjudged illegal, invalid, void, and of no effect, and canceled and surrendered by the contractors, and that the Albany officials and the contractors be forever enjoined from acting under said contract. The ordinance passed by the common council has heretofore been referred to. Acting upon that ordinance, the board of contract and supply, on September 21, 1900, advertised that it would, at a time named, receive sealed proposals for resurfacing Madison avenue, etc., in accordance with the forms of proposals and specifications which could be seen in its office. Those specifications, which apparently were prepared by the city engineer, provided, among other things, as follows:

"(3) No bids will be received from parties who cannot show a reasonable experience with and preparation for the expedient and satisfactory performance of the work herein specified. The bidder must file, at or before the time of making his bid, a certificate showing some other city with a climate similar to that of Albany, where pavement of similar material and quality has been laid by said bidder at least five (5) years previous to the issue of said certificate, and that said pavement has worn well and satisfactorily; said certificate to be signed and duly acknowledged by the chief municipal officer having charge of such work in the city where such pavement has been laid. The board of contract and supply reserves the right to reject any bid not presenting satisfactory samples and evidence as above."

"(21) The asphaltum used must be equal in quality to that mined from the Pitch Lake on the Island of Trinidad, or from the Bermudez Lake in the province of Bermudez, Venezuela, specially refined, and brought to a uniform standard of purity and gravity to be approved by the city engineer. The use of asphalts commonly known as 'land asphalt' and 'rock asphalt' will not, under any circumstances, be allowed."

As a result of this action on the part of the city authorities, a contract or agreement was subsequently, and on October 6, 1900, entered into between them and the firm of Warner & Quinlan, by which the defendants Warner & Quinlan undertook to resurface said Madison avenue in accordance with the said specifications for the sum of $1.34 per square yard; their bid being the lowest received.

Although, as usual in hearings of this kind, there is much conflict in the evidence, yet certain matters at issue may be taken as fairly established on this hearing. The contractors did not comply with said section 3 of the specifications as prepared by the city

engineer and acted upon by the board of contract and supply. The certificate filed by the contractors thereunder is as follows:

"This is to certify that C. M. Warner and P. R. Quinlan have been engaged in laying asphalt pavements in this city for the past six years or more; that said pavements have worn well, have given good satisfaction, and are now in good condition.

"James Heagher, Commissioner of Public Works, Syracuse, N. Y.

"Subscribed and sworn to before me this 29th day of September, 1900.

"L. B. Kenyon, Notary Public, Onondaga Co., N. Y."

A reading of the certificate will show to the most careless observer that the contractors have not attempted at all to show by this certificate that the streets paved in the city of Syracuse for the past six years or more were of similar material and quality to the kind proposed to be used now on Madison avenue. It is also fairly established that despite the injunction against the use of land and rock asphalt contained in the specifications the asphalt proposed to be used by the defendants Warner & Quinlan is land and rock asphalt, known as such on the Island of Trinidad and to the trade generally, and recognized as such by the British government in its imposition and collection of duties thereon at that place. It is also fairly clear that this kind of asphalt is not "equal in quality," but is of an inferior quality, to that of the Pitch Lake or lake asphalt derived from the lake itself. It is also significant in this connection that, while the defendants Warner & Quinlan are profuse in their affidavits in attempting to show that their asphalt is not really land and rock asphalt, and that some other asphalt is, the affidavits of the city authorities are entirely mute as to the reason why this inhibition against "land" or "rock asphalt" was inserted in the specifications. Certainly there was some reason for it, and, if it was not in response to a demand from the citizens and taxpayers of Albany that such asphalt should not be again used for paving its streets as claimed by plaintiffs, the real reason for its insertion could have been readily given. Some proof is also submitted by the plaintiffs showing or tending to show that about 10 years ago Madison avenue was paved with land or rock asphalt, which pavement, in a comparatively short time, became worthless. The defendants Warner & Quinlan justify their bidding under the conditions imposed by these specifications by an understanding or conversation that a member of that firm had, or claims to have had, with the majority of the members of the board of contract and supply prior to the submission of their bid, and prior to its acceptance by said board. It is claimed on behalf of said contractors that they had assurances from this board or a majority of its members that it was not intended by this section 21 to exclude the kind of material that they can now furnish it, that they propose to furnish, and samples of which they furnished this board. Thus we have a position fairly shown on the affidavits submitted that specifications are prepared by the city authorities carefully excluding a certain kind of material for paving one of its streets, which the plaintiffs allege is of an inferior quality, and cheaper than the material advertised for, but which the city authorities eventually accepted under this advertisement. It further appears from the pa-

pers submitted that there are numerous deposits of land or rock asphalt on the Island of Trinidad, and it is urged on behalf of the plaintiffs that it is extremely probable that other owners of that material would have bid had they not been deterred by this clause in the specifications against that kind of asphalt, and that under the statute such opportunity to bid should have been given.

It is urged by the defendants that, conceding all the plaintiffs claim, they cannot succeed in this action, nor are they entitled to a temporary injunction, for the reasons that the city authorities are to decide upon the kind and character of the material of which this street shall be paved; that they have called for a certain, definite kind of material; that they will accept no other; and that the contractors are under heavy bonds to furnish that kind of material, and no other material. Hence the plaintiffs, or the city of Albany, cannot be damaged, for, if the material furnished is not of the kind called for, it will not be accepted, and no one will be injured thereby, and no waste of public funds result therefrom. The answer of plaintiffs to this is that the city authorities (including the city engineer, whose decision upon the quality of materials furnished will be conclusive) have already passed upon and accepted the quality of asphalt that Warner & Quinlan propose to furnish as shown by their uncontradicted statements and the samples of asphalt submitted and of necessity accepted when the bids were accepted and agreement executed. It is urged by plaintiffs that advertising for one material and carefully excluding another and cheaper material, and then accepting the inferior, cheaper material, was a fraud upon the plaintiffs and other taxpayers of Albany that should be restrained by the court. It is also urged by plaintiffs that inviting public bids for expensive paving material in accordance with the charter and accepting cheaper and inferior materials was not a compliance with the charter of cities of the second class, which directs that work of this kind shall be let to the lowest bidder, was not public competitive bidding, and hence was an illegal official act, and the execution of the agreement thus arrived at should be restrained. It is also urged by plaintiffs that advertising for an expensive paving material, and then letting said contract for an inferior pavement without advertising, will, if permitted, result in a waste of public funds, and should be restrained. Without referring further to argument of plaintiffs, I think that under the statutes and decisions thereunder they have made out a case for a continuance of the temporary injunction heretofore granted pending trial. However, the city authorities are now anxious for an early trial, and I understand the contractors are also. There is no trial term of this court in Albany until September 23d. The decision of a matter of this importance on ex parte affidavits with no opportunity for cross-examination is, as before intimated, unsatisfactory, and does not always produce that result which would be arrived at by a trial upon the merits. An order may be handed up continuing the injunction granted by Justice Chase pending trial, with $10 costs to plaintiffs; said order also to provide as a condition of granting it that plaintiffs stipulate to go to trial upon eight days' notice before a referee to

be agreed upon by the parties or appointed by the court, and proceed to a speedy determination of the matters at issue, provided the defendants desire to proceed with such trial. If the result of such a speedy trial should be favorable to the defendants, Madison avenue can easily be repaved this season under the existing contract.

Ordered accordingly.